IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Name and address of Plaintiff:

Mark-Alonzo Williams

‡13

1:16-CV-300

v.

Full name, title, and business address
of each defendant in this action:
1 John Wetzel, Secretary Of Corrections
Michael Klopotosky, Regional Superintendant
Michael Mahally, Superintendent (SCI-Dallas)
Captain Pall (SCI-Dallas)
Corrections Officer (one) Joseph Fye
2 Vincent Mooney, Superintendant (SCI-Coal)
Norman Demming, Deputy Superintendant (SCI-Dallas)
Joseph Zakarauskas, Deputy Superintendent (SCI-Dallas
Use additional sheets, if necessary
Number each defendant.

RECEIVED

DEC 15 2016

CLERK, U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

Plaintiff brings this action against the above named and identified defendants on the following cause of
action:

I.   Where are you now confined?   SCI-Forest

    What sentence are you serving?   8 to 20 yrs.

    What court imposed the sentence?   Centre County Common Pleas

II.   Previous Lawsuits

    A.   Describe any and all lawsuits in which you are a plaintiff which deal with the same facts involved
         in this action. (If there is more than one lawsuit, describe the additional lawsuits on another piece
         of paper, using the same outline.)

    1.   Parties to this previous lawsuit

         Plaintiffs   Mark-Alonzo Williams

                              vs.

         Defendants   Eric Armel, Deputy Superintendant
                                 et al defendants

    2.   Court (if federal court, name the district; if state court, name the county) and docket number
         Western District (Pittsburgh) 2:16-CV-01233LPL

Vincent Mooney, Superintendant SCI-Coal, offered his institution's confines as buffer from liability while extending hardship conditions revoking my parole, calling emergency transfers by proxy of SCI-Dallas' prison administrators cabal. John Wetzel is their supervisor he acquiesced to their acts against a single inmate and due to his vengeful biases against homosexuals.

**V.** Did the incident of which you complain occur in an institution or place of custody in this District?
If so, where? No

and answer the following questions:

**A.** Is there a prisoner grievance procedure in this institution?
Yes (✓)  No ( )

**B.** Did you present the facts relating to your complaint in the state prisoner grievance procedure?
Yes (✓)  No ( )

**C.** If your answer is YES,

1. What steps did you take? I filed a grievance at SCI-Coal but mailed to the Grievance Coordinator at SCI-Dallas per procedure.

2. What was the result? The grievance(s) — 3 total — were never responded to and simply vanished: no replies.

**D.** If your answer is NO, explain why not: N/A

**E.** If there is no prison grievance procedure in the institution, did you complain to prison authorities?
Yes (✓)  No ( )

**F.** If your answer is YES,

1. What steps did you take? I complained to a Captain Stetler at SCI-Coal; a DSCS, A. Luscavage of SCI-Coal.

2. What was the result? They permitted me to languish in a hostile environment until I was attacked by an inmate.

**VI.** Relief

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statues.

My custody level restored to a CL-2z. An Institutional transfer back to (A) block/SCI-only Graterford, Greterford, PA. My Parole Guaranteed (and protected); and $266,666 monetary restitution

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

3. Name of judge to whom case was assigned _Magistrate Judge Lisa Pupo Lenihan_

4. Disposition (For example: Was the case dismissed? Was it appealed? Is it still pending?)
   _Still pending._

5. Approximate date of filing lawsuit _Sept. 9. 2016_

6. Approximate date of disposition _not yet._

B. Prior disciplinary proceedings which deal with the same facts involved in this action:

   Where?_____
   When?_____
   Result:_____
   _____
   _____

III. What federal law do you claim was violated? _14th Amendment (Equal Protection Clause)_
   _& Section (1); Title VII (Sex Discrimination), 8th Amendment_

IV. Statement of Claim

   (State here as briefly as possible the _facts_ of your case. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheet if necessary.)

A. Date of event: _23rd December 2014_

B. Place of event: _SCI-Dallas 1000 Follies Road, Dallas, Pennsylvania_

C. Persons involved--name each person and tell what that person did to you: _Captain Pall, Deputy Superintendant(s) Demming and Zakarauskas and Superintendant Mahally issued a retaliatory prison transfer because I made statements about filing a P.R.E.A (Prison Rape Elimination Act) against an inmate who they released from segregated administration after he threatened to rape and kill me. I avoided the attack, but that only enraged security because "his release" from segregated administration by those security members was by proxy violence. Regional Superintendant Klopotosky continued with the retaliatory transfers to further cause atypical and excessive hardship. On Dec 5th 2014, prior to the 1st transfer (there were 3 total in a span 1 year) Pall said, "Are you going to finally stop with this gay stuff?" Corrections Officer (one) Joseph Fye permitted the life-threatening inmate on the cell block where he was not assigned and gave the inmate access to my cell where he hid in ambush to act out the rape._

15th December 2016

(Date)

(Signature of Plaintiff)

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARK-Alonzo Williams,
　　　　　Plaintiff,

　　　　　V.

JOHN WETZEL, Secretary
of the Pennsylvania Department
of Corrections; (REGION ONE)
Regional Superintendant, Michael
Klopotoski; Mr. Michael
Mahally, Superintendant(SCI-
Dallas); Mr. Vincent Mooney,
Superintendent (SCI-Coal);
Joseph Zakarauskas, Deputy
Superintendent, (SCI-Dallas);
Norman Demming, Deputy
Superintendant, (SCI-Dallas);
Mr. Pall, Captain (SCI-Dallas);
Joseph Eye, Corrections
Officer (one),
　　　　　Defendants.

　　　　　Case No.

# COMPLAINT

1.　Plaintiff Mark-Alonzo Williams is a gay man
who has been incarcerated in [five] different prisons

by the Department of Corrections ("DOC") for the past two years this 23rd December 2016. Plaintiff Mark-Alonzo Williams, a gay man, is not a feminine-presenting gay person. However, his sexuality was exposed by State Correctional Institutional at Dallas prison administrator(s) and Security when they decided to release an inmate from segregated administrative custody on 8th October 2014 between 1900-2000 hours by whom the plaintiff received his death threats. SCI-Dallas Security, namely Captain Pall, Corrections Officer (one) Petroski and other prison officials in the administration were aware of the threat. All the defendants named in this Complaint were made aware of the death threats and pledges of fidelity and sexual desire this inmate avowed for the plaintiff in a sense "...if I can't have you, no one will one..."

2. The plaintiff went to SCI-Dallas Security, and the inmate in question was placed in custody 23rd September 2014 pending investigation (15 days standard confinement in segregated custody). The Plaintiff was assured by his block officers that the inmate would be transferred due to the letters the inmate wrote to the plaintiff pledging murder. The inmate is indeed a murderer convicted of the crime and sentenced to Life while incarcerated at SCI-Dallas. On 8th October, the inmate averted all security checkpoints when released from segregated administrative custody, dropped his property off several boxes on his assigned cell block, between 1900-2000 hours, crossed hundreds of yards to the cell block the plaintiff

was assigned for several years, and attempted to ambush the plaintiff but the plaintiff was at Commissary (a separate unit). The inmate in question, somehow managed to identify himself to the cellblock security as the plaintiff, gaining access into the plaintiff's cell previously locked, and then hid under the plaintiff's bunk and awaited the plaintiff's return from Commissary (a separate unit).

3. The only corrections officer who could've unlocked the plaintiff's celldoor to permit access for the inmate in question is Corrections Officer (one) Joseph Fye. It is important to note that there could not be any confusion or misperception or mistaking the identity of the plaintiff to that of the inmate in question: the plaintiff is a black man and the inmate in question is a white man. All Security was alerted that the inmate in question was being released that night of 8th October 2014; and still, the plaintiff — upon his return from commissary — broke free in the cell from the inmate in question, slammed closed the celldoor which locked automatically after the attack, securing the inmate in question inside the plaintiff's cell, then addressed Security. Corrections Officer(s) Fye and Levan abducted the inmate in question and sent him back to the segregated housing unit. Again, the plaintiff was assured that the inmate in question, "this time, definately" will be transferred. The plaintiff's uniform was rendered torn; his cell ransacked.

The harm to Mr. Williams is the direct result of (note: no medical attention, no interrogation by security of the plaintiff)

the Department of Corrections' failure to adequately provide and/or ensure and/or impliment policies and training so that staff is equipped to handle the safety and privacy of gay inmates. Neglecting their clear constitutional obligations as well as the clear requirements set forth under the Prison Rape Elimination Act (PREA), 42 U.S.C. § 15601, et seq., the DOC has failed to prevent foreseeable, ongoing and severe harm to Mr. Williams then or since by three institutional transfers to State Correctional Institutions whereby on record Mr. Williams had or has inmate-separations; all sinister acts to punish, exploit and impress prolonged hardship of an "atypical" kind against a gay man, against a gay man (the plaintiff) who said to SCI-Dallas security that he planned to make statements in a PREA claim on the 23rd September and 8th October events whereby the inmate in question received a (30 day disciplinary Misconduct for "Unauthorized Area") ... not Attempted Rape, not actualized Assault. The plaintiff asked if it were true that the inmate in question worked as a Confidential Informant in the prison and for Security for months; Security neither confirmed nor denied the assertion but Mr. Williams was cautioned, "Don't write Mr. Demming again." A caution the plaintiff ignored. Deputy Superintendant Norman Demming replied, "Mr. Bader, (the inmate in question) should be the one transferred. We'll see, Mr. Williams." This letter

the plaintiff, painfully regrets, was submitted with the Grievance filed as proof to the remarks the deputy made by which not to transfer, Mr. Williams ... nor would he sign-off on it. The Department of Corrections however resorted to a retalliatory transfer. A violation of the 14th Amendment, and with willful, intentional and malice conspiratorial action(s) submitted an *Emergency Transfer Order*, and a "specialty transport" to a neighboring prison (supermax) (SCI-Coal) which received Mr. Williams in less than 20 days time. From a 5th December 2016 meeting Mr. Williams had with the Head Of Security Captain Pall who warned, "Are you going to stop with this gay shit, already?" To which Mr. Williams replied, "Being gay is not the problem, releasing murderers who are secretly rapists, empowered by Security to do whatever because they're rats, and then hiding him under my bunk so he could do whatever, is the problem ... not my being into gay shit!" Mr. Williams added, "I did the right thing. I did not fight, because I don't want to mess up parole. I ran to Security and reported what happened, and he was apprehended without further incident." Captain Pall responded flatly, "What? You want a cookie." Mr. Williams was transferred 17 days later to SCI-Coal Township, and to their (SCI-Dallas Security) former Major now Superintendant at SCI-Coal, Vincent Mooney; their ally.

4.  Vincent Mooney, Head of Security at SCI-Dallas at the time, was involved in another

Retaliatory Transfer Case whereby he wasn't the receiv-
ing Institution but the Initiating: See Castle v.
Clymer, 15 F. Supp. 2d 640, 666 (E.D.
Pa. 1998). He's Now that Superintendant Vincent
Mooney running SCI-Coal, he uses his facilities as
safehaven for SCI-Dallas' retaliation cases it
creates, and the two institutions have become one
in their cabal(s) against "blacklisted" inmates
they've deemed worthy of "the wringer". I was
not only transferred out of retaliation for having
the audacity to protect my rights, but my
recommendation for parole awarded by SCI-
Dallas prison administrators that June 2014 was
rescinded at SCI-Coal that March, and vis-a-vis
another retaliatory transfer, which proved to be "Relief".

5.    15th January 2015, I was given another
Emergency Transfer by SCI-Coal Security because
of my Grievance(s), which they confiscated and
never answered or permit to wend up the chain,
and sent me to SCI-Graterford ...and an Honor
Block suited to my Custody Level ; a (2-Z) the
lowest possible. When the Parole Board offered
to meet me at Graterford, (Region One) Regional
Superintendant Michael Klopotosky (also once
an SCI-Dallas Superintendant for two years when
I was there) colluded with Superintendant Vincent
Mooney to submit [another Emergency Transfer]
to bring me back to SCI-Coal. In 14 days,
the transfer was granted by Mr. Klopotoski,
and notwithstanding my inmate-separations at

SCI-Coal in wait for my return from SCI-Graterford

6. On 2nd/March 2014, after my return to SCI-Coal 2nd/February 2015, in Parole Hearing the SCI-Coal staff member who led the Hearing and the Parole Board member on Skype to only question my Z-code "single cell" status; not my job in wait a cookie factory in Altoona; not my approved homeplan with my godmother, a retired Corrections Officer herself in Altoona; not my ability to care for myself without government subsidies; none of it mattered because the fix was in. On 23rd March 2015, one of my inmate-separations at SCI-Coal hired another inmate to attack me. I was forced to defend myself at the doorstep of (E) cellblock at SCI-Coal. I was detained in Solitary Confinement for six months and 2 days. Again, a (3rd) re-talliatory transfer by (Region One) Regional Superintendent Michael Klopotoski and Super-intendant of SCI-Coal Township Vincent Mooney. They orchestrated my institutional transfer to SCI-Fayette, for the following reasons: 1.) It placed me 350 miles away from my family and supporters and 2.) I had (2) inmate-separations on record there. (By proxy retalliation of physical violence by inmate(s)) Thus, "atypical and severe hardship" non-stop. On 20th March 2016, an inmate-separation, again, paid another inmate on my cellblock to attack me, and I was forced to defend myself. I was detained for disciplinary causes for 90 Days: Fighting. Blaming the victim for the (3rd time).

7. A 90 Days term morphed into an added 120 days in segregated custody pending transfer at SCI-Fayette. There, I suffered Sexual Harrassment by a correction(s) officer, drugging by the SCI-Fayette Psychiatrist at the behest of security who grew angered by letters and grievances which mentioned mail tampering, medical indifference, (vis-a-vis wrong and excessive over-prescription of medications meant to harm); and to the point that I was forced to file a Section 1983 to protect my rights while warehoused in segregated custody by prison administrators seemingly so far up the chain as John Wetzel, Secretary of the Pennsylvania Department of Corrections, because I wrote him. I wrote his Deputy, Ms. Shirley Moore-Smeal and informed them of this cabal, vengence, retalliatory transferred (whereas now it has been discovered at SCI-Forest I have (2) inmate separations); these are not oversights, the languishments in solitary confinement —— retalliatory transfers that took weeks now take seasons and purposely so that I can meet my inmate-separations, at another Supemax like SCI-Coal.

8. When I was at SCI-Graterford for 17 days in Mid-January to early-February 2015, I was in General Population, 5 years Misconduct-free, due to go home paroled that Spring with a recommendation, a CL-2z, all the priviledges and success in a prison environment to finally be free of it, and the defendents named in this

Complaint, homophobes, petty, a-moral, vengeful, uber-corrupt, unlawful State Officials who have violated state law so eggregiously "Immunity" from prose-cution and/or libel such not exist upon my prayer for relief. A 2 year campaign against a gay inmate who did the right thing, only to meet a jailer's cruel and unusual mentality which believed that I ought to shut-up and simply take whatever they decide sans any self-regard or sense of dignity or need for justice. Mr. Williams lost half his property.

8. The defendants named in this suit are worse than psychopaths, sociopaths and behavioral deviants I'm forced to walk alongside and/or exist by in the prison, peneological, microcosm. Their aim was pure, unmitigated vengence with impunity. Thus, Immunity shan't be granted whereas prison officials can't claim the protection of Immunity qualification if they were deliberately indifferent to a known risk of suicide of the mentally-ill.

10. On record, I am on the D.O.C. Mental Health Scrolls diagnosed with Clinical Depression (Severe) Anxiety and Insomnia. I contend that their multiple retaliatory prison transfers, long-term segregated administrative holds, informed placements to put me at risk to require segregated administrative holds, and the doctoring of files, documents, incident reports to suppress, manipulate, distort, hide, exaggerate, slander and harm the plaintiff Mark-Alonzo Williams, his character, his sexuality, his parole, and his life deserve justice because

of the violations to the 14th Amendment under the Equal Protections Clause (Section 1) and Title VII (Sex Discrimination).

## PARTIES

1. Mr. Mark-Alonzo Williams is a 45 year old gay man currently incarcerated in the State Correctional Institution at Forest (SCI-Forest), a maximum security men's prison with a gang unit operated by the Pennsylvania Department of Corrections. The plaintiff is being wrongfully, cruel detained in Solitary.

2. Defendant, John Wetzel is, and was at all times relevant to this Complaint, the Secretary of the Pennsylvania Department of Corrections, maintains an office in Mechanicsburg, Pennsylvania. Defendant Wetzel is responsible for the oversight, operation and administration of the Commonwealth's correctional system including the implimentation of training and policies regarding sexual abuse, harrassment, personnel actions and transfers. He is being sued in his official capacity.

3. Defendant, Michael Klopotosky is the (Region One) Regional Superintendent and two of the institutions under his supervision are SCI-Dallas and SCI-Coal, the third is SCI-Graterford. Defendant Klopotosky is responsible for the oversight, operation, and administration of policies, training and security regarding sexual abuse, harrassment, discrimination and transfers. Defendant Klopotosky is being sued in his official capacity.

4. Defendant, Michael Mahally is the Superintendant at State Correctional Institution at Dallas (SCI-Dallas). Defendant Mahally is responsible for the oversight, operation, and administration of SCI-Dallas including the implimentation of training and policies regarding sexual abuse, harrassment, discrimination and transfers. Defendant Mahally is being sued in his official capacity.

5. Defendant, Vincent Mooney is the Superintendant at State Correctional Institution at Coal Township (SCI-Coal Township). Defendant Mooney is responsible for the oversight, operation, and administration of SCI-Coal Township including the implimentation of training and policies regarding sexual abuse, harrassment, discrimination and transfers. Defendant Mooney is being sued in his official capacity.

6. Defendant, Joseph Zakarouskas is Deputy Superintendant (Facility Manager) at State Correctional Institution at Dallas (SCI-Dallas). Defendant Mooney is responsible for oversight, operation, administration, and Security of SCI-Dallas including the implimentation of training and policies regarding sexual abuse, harrassment, discrimination, and transfers. Defendant Zakarouskas is being sued in his official capacity.

7. Defendant, Norman Demming is Deputy Superintendent (Centralized Services) at State Correctional Institution at Dallas (SCI-Dallas). Defendant Demming is responsible for oversight, operation, administration, and Security of SCI-

Dallas including the implimentation of training and policies regarding sexual abuse, harrassment, discrimination, and transfers. Defendant Demming is being sued in his official capacity.

8. Defendant, Mr. Pall is Captain of Security at State Correctional Institution at Dallas (SCI-Dallas). Defendant Pall was at all times relevant to this Complaint an employee of the DOC serving as Supervisor of Investigations and Special Intelligence at SCI-Dallas, and given license to submit Emergency Transfers. He is being sued in his official capacity, and,

9. Defendant, Joseph Fye is a corrections officer (one) at State Correctional Institution at Dallas (SCI-Dallas). Defendant Joseph Fye was at all times relevant to this Complaint an employee of the D.O.C. serving as a corrections officer (one) at SCI-Dallas directly involved with security. He is being sued in his individual capacity.

10. Defendants were at all times relevant and acting under color of state law.

## JURISDICTION AND VENUE

11. Mr. Williams brings action pursuant to the 8th and 14th and 1st Amendments to the United States Constitution and 42 U.S.C § 1983, and TITLE VII, Sex Discrimination;

12. This Court has jurisdiction under 28 U.S.C. § 1331 over the constitutional claims, as well as those arising under 42 U.S.C. § 1983.

13. Venue is proper pursuant to 28 U.S.C.

## FACTUAL BACKGROUND

14. Plaintiff Mark-Alonzo Williams has been incarcerated within the Pennsylvania Department of Corrections (D.O.C.) since May 2003.

15. Mr. Williams has been a gay man since puberty.

16. Mr. Williams has lived and presented hisself as gay when free but not while incarcerated to avoid risk and complication.

17. His appearance is masculine as well as his voice and mannerisms.

18. Mr. Williams has lived in a cell by hisself and housed at the status code Z for his entire incarceration, because the Department of Corrections, relative to his sexuality being a matter of record, regard his sexuality as a threat; and thusly the classification in housing makes him standout in general population because Z-codes are regarded for gays in most cases. Other inmates who did not admit they were gay upon classification into the corrections system are housed with other male inmates. The inmate in question who attempted to rape Mr. Williams, then murder him, had a cellmate.

**A.** Retaliatory Transfer, Sex Discrimination,
And Violation To The Equal Protection Clause
at SCI–Dallas and Free Speech

19. Mr. Williams was incarcerated at SCI–Dallas from November 5th 2005 to December 23rd, 2014, due to be paroled.

20. After the inmate in question was apprehended a second time for making threatening and/or sexual attacks on the plaintiff, a meeting with the Head Of Security Captain Ball said, "What? You want a cookie?" And said, "It's 50/50 who I will transfer." After Mr. Williams, the plaintiff, made statements to the effect of filing a P.R.E.A complaint and befuddled as to why he might become selected for transfer, when he did the right thing: not fight and reported the attack to his block officer Corrections Officer (one) Joseph Eye. (See Farmer v. Brennan, 511 U.S. 825, 843, 114 S. Ct. 1970, 1982, 128 L. Ed. 2d 811, 829 (1994).

21. The inmate in question was also called into a meeting that same day, and just one hour before, 5th December 2014, and Captain Ball knew before he met with Mr Williams just who he intended to transfer. (the victim not the attacker caught in the wrong cell and the wrong cellblock entire newly released from administrative segregation for threatening said victim).

22. Mr. Williams never worked for SCI–Dallas Security as an Inmate Confidential Informant as his attacker has.

23. In a conversation on the cellblock (G), Mr. Williams had with Deputy Superintendant Zakarauskas, the plaintiff asked him: (See R.G. v. Koller, 415 F. Supp. 2d 1129, 1154-55 (D. Haw. 2006) —— "Zakarauskas...

... "You guys are not going to transfer me, are you?" The Deputy Superintendent Zakarauskas replied smugly, "Stop writing statements about what happened." To which the plaintiff declined such advice; most of his statements regarded prison security lapses and prison administrators pre-mature release of that inmate then too questions from segregated administration, and what they had done; but the formal statement to P.R.E.A wasn't submitted. However, it was discovered by a random cell-search conducted by Security prior to 5th December's meeting with the Head Of Security. (See Goff v. Burton 91 F.3d 1188, 1191 (8th Cir. 1996) See Rauser v. Horn, 241 F.3d 330 3d Cir.)

24. Corrections Officer (one) called the defendant Joseph Fye, summoned the plaintiff on cellblock (G) in the afternoon of his shift and asked, "Are you sending in a P.R.E.A. Complaint?" To which the plaintiff answered, "I don't know yet." The plaintiff recalls that he was asked that question prior to the 5th December 2014 meeting with Captain Pall; named defendant herein; Head of Security. (See Allah v. Sieverling, 229 F.3d, 220, 224-225 (3rd Cir. 2000))

25. Mr. Williams then was transferred (from General Population G-Block) Monday, 23 December 2014 at 0930 hours. An S.U.V. from SCI-Coal Township travelled especially for the plaintiff to pick him up. C.O. Rodriguez the driver from SCI-Coal Township. C.O. Rodriguez asked, "You're the gay dude?" (See Bloch v. Ribar, 156 F.3d 673, 683-84 (6th Cir. 1998)).

B. Retaliatory Transfer, Sex Discrimination, And Violation To The Equal Protection Clause at SCI-Coal

26. Mr. Williams was incarcerated at SCI-Coal Township from December 23rd 2014 to October 27th 2015.

27. Mr. Williams called his godmother Georgetta Jarvis who in turn informed that she contacted SCI-Dallas prison administrators namely defendant Norman Demming. He, the defendant, told Ms. Jarvis the plaintiff was transferred because he had numerous death threats. Mr. Williams, seeing that SCI-Dallas prison administrators were already awork to distort, fix, manipulate, slander and create subreption upon the institutional record to justify an unwarranted tranfer in retalliation, filed Grievance(s) and mailed them to SCI-Dallas Grievance Coordinator, Ms. Robin Lucas.

28. The Grievance(s) were never responded to, nor returned to the plaintiff with investigatory replies or any acknowledge whatever.

29. Mr. Williams complained to staff knowing he had inmate separations at SCI-Coal he had not run into yet in general population and demanded a transfer due to the risk of harm, even death. Prison administrators, namely Captain Stetler at SCI-Coal ignored him. (See Greene v. Bowles, 361 F.3d 290, 294 (6th Cir. 2004)

30. Mr. Williams received good news on 15th January 2015, SCI-Coal prison administrators transferred him to SCI-Graterford. He was there for only 17 days before he was summoned.

31. On 1st February, 2015, Mr. Williams recognized the retalliation for what it was, as he prepped to see parole at SCI-Graterford, as he was placed perfectly on an Honor Block at SCI-Graterford, as he was employed at SCI-Graterford, (Region One) defendant Regional Supervisor, Michael Klopotoski and defendant Superintendent Vincent Mooney at SCI-Coal Township recalled the Emergency Transfer and brought the plaintiff back to SCI-Coal on 2nd February 2015 at 1925 hours.

32. On March 2nd 2015 at SCI-Coal, prison administrator turned what should've been a walk-through hearing for parole being granted since the plaintiff had the recommendation from SCI-Dallas, 5 years Misconduct Free, all programs completed, a Custody Level Two - Z status, an approved Homeplan, and good standing with his future community in Altoona and a job in-waiting paying $9.00 at a cookie factory, the hearing became a interrogation on my sexuality; what it means to be gay as opposed to a Sexual Predator. I was asked by the SCI-Coal, Parole Board agent on-site (as opposed to the Parole Board Member on Skype), "Do I know the difference?" And I was asked, "Why are you a Z-code?" Parole is not a protected constitutional right, but sex discrimination and putting in place policies and mandates preemptively to make parole a farce is a violation of law.

33. The plaintiff recognized that SCI-Dallas prison administrators reached the parole board and SCI-Coal, and that the 2nd March 2015 Parole Board Meeting was more than a ruse but a back-handed way to rescind the recommendation for parole, and it was exacted with cruel and deliberate precision by Dallas svengalis.

34. On 20 March 2015, at SCI-Coal Township, the plaintiff was attacked by an inmate who was paid to do so by the inmate-separation on the other side of SCI-Coal Township's general population grounds; exactly what the SCI-Dallas and SCI-Coal administrators desired, the defendants named herein, John Wetzel, Michael Klopotoski, Michael Mahally, Joseph Zakarauskas, Norman Demming, Captain Pall, and Vincent Mooney; defendant Joseph Fye is not accountable for the retaliatory transfer but he's accountable for permitting the inmate in question access to the cell I used to occupy on G-cellblock at SCI-Dallas.

35. On 27 March 2015, the plaintiff received a Misconduct for Fighting #16 Class One offense, usually a 30 to 45 days penalty in solitary confinement, but the plaintiff received 90 Days plus an extended stay of (4) months pending transfer. The transfer orders that were once sudden, unexpected and within days anymore took whole seasons to approve now that the plaintiff was housed in solitary confinement where prison administrators aspired him to be, and fixed his environment to win that result.

36. On 27 October 2015, the plaintiff was transferred to SCI-Fayette, no longer under defendant Klopotoski's cabal in Region 1.

## C. Retaliatory Transfer, Sex Discrimination, And Violation To The Equal Protection Clause at SCI-Fayette

37. As it was always relevent in this case, Mr. Williams was and is being housed by hisself without a cellmate (and for 15 years) because the Department of Corrections ruled his sexuality a threat to all men in the Department of Corrections, thus, the plaintiff by order, rule and housing mandates (a Z-code) is discriminated against by mere virtue of the fact that he was honest and told prison officials at Classification in 2003 Camp Hill that he was gay. A meeting held in confidence during classification, exploited his basic right to privacy by the manner in which the plaintiff has been housed. (See Sterling v. Borough of Minersville, 232 F.3d 190, 196 (3rd Cir. 2000)

38. On 28th October 2015, the plaintiff had long since received correspondence(s) for his supporters that he had (2) inmate-separations at SCI-Fayette, and he reported that fact

to the prison administrators there upon his first meeting with them in a segregated housing unit on 2nd November 2015 and again on 9th November 2015. Before his release from the segregated housing unit, Deputy Superintendant, Steven Gates (alongside a committee of 4 other prison administrators at the conference table) said, "Mr. Williams good luck out there."

39. On 21 March 2016, only 4 months later, the plaintiff was forced to defend hisself; a separation, again, found his whereabouts, as the plaintiff warned Fayette prison administrators to stop perpetuating the retalliation emanating from SCI-Dallas prison administrators, and simply transfer (said the plaintiff) back to SCI-Graterford where he was safe, successful and in general population. However, the fight, on the aforementioned date was ruled as "William's Poor Choice", and he was penalized 90 Days in solitary confinement, plus an extended 90 Days pending transfer.

40. On 5th October 2016, the plaintiff — though he warned prison administrators not to send him there — was transferred to SCI-Forest. Two inmate-separations at SCI-Forest forced prison officials to keep Mr. Williams in segregated administrative custody pending transfer. The plaintiff is currently housed in this injurous manner, failing eye sight, obese and sans visitation, contact with nature never and isolated, as prison administrators at SCI-Forest maintain the retalliation from previous institution SCI-Dallas.

# CAUSES OF ACTION

## COUNT I –

### Deprivation of 8th and 14th Amendment Right To Be Free From Cruel And Unusual Punishment, And 1st Amendment (Adverse Action/Causal Connection)

(Against Defendants Wetzel, Klopotoski, Mahally, Zakarauskas, Demming, Pail, Mooney, and Fye)

41. The allegations set forth in each and every preceding paragraph are incorporated herein by reference.

42. The Defendants are aware of the need to protect inmates from sexual abuse and harrassment by corrections and/or staff and/or inmates.

43. In failing to enact and enforce policies, properly so investigate allegations of sexual abuse and appropriately discipline the attacker (Mr. Jason Bader) with regards to a transfer from SCI-Dallas and the plaintiff, the defendants were and continue to be deliberately indifferent in violation of the plaintiff, Mr. Williams' right to be free from cruel and unusual punishment under the 8th and 14th Amendments, and his rights to free speech.

## COUNT II –

### Deprivation of 8th Amendment Right To Be Free From Cruel And Unusual Punishment, And 1st Amendment (Protected Conduct),

(Against Defendants Fye, Mooney, Pall) (Against Mahally)

44. The allegations set forth in each and every preceding paragraph are incorporated herein by reference.

45. Defendants violated Mr. Williams right and yearning to be free from cruel and unusual punishment under the 8th Amendment, and the plaintiff's reserved right to free speech and complain.

## COUNT III –
Deprivation of the 14th Amendment (Equal Protection Clause)
(Against Defendants Wetzel, Klopotosky, Mahally, Zakarauskas, Demming, Poll and Mooney)

46. The allegations set forth in each and every preceding paragraph are incorporated herein by reference.

47. The Defendants are aware that the government prohibits treating classes of people differently unless there is a sufficiently legitimate purpose for doing so; fear, ignorance and homophobic oppression are not legitimate purpose(s). Thus, prison rule(s) and policy in treating an inmate differently must be a legitimate peneological, common sense connection to a valid goal or concern of the prison. The security decision in this case was made complicated when the fix was simple: transfer the attacker who tried to rape and murder the plaintiff. A decision Security at Dallas appeared poised to make until the plaintiff made statements about filing a report to protect his rights and dignity which prison administrators and Security sought to punish with transfers (five in One year & 10 Months).

48. Permanent Z-code status (single cell living) proved to make the plaintiff more vulnerable than protected; a housing status devised to protect the general population for the plaintiff actually made the plaintiff more at risk to the general population.

This case proves that race segregation and sex discrimination exacerbated already high negative tensions, forces and wills in the peneological environment at SCI-Dallas, SCI-Coal and SCI-Fayette, and each institutional transfer that stoked those high negative tensions, forces and wills, but by prison administrators and Security at the afore named State Institutions resulted in Mr. Williams being assault- ed by other inmates, and in all, failed to protect the plaintiff at each institution and with motive whose iniquitous lapse was premeditated.

## COUNT IV —
## Deprivation of Title VII (Against Defendants Pall and Fye)

49. The allegations set forth in each and every preceding paragraph are incorporated herein by reference.

50. The defendants abject and subversive indifference to sex-stereotyping, believing homosexuality is a decision (i.e. Pall: "Are you going to stop with this gay, shit?") or believing that any man, so as long as he is a man, that I must want said man inside the cell I reside while I'm away (i.e. Fye: when he unlocked the celldoor to give the inmate in question Jason Bader access, so he could hide under the bunk...) proves their statements and actions revealed State Of Mind and severe lack of training in failing to enact and enforce policies irregardless of sexual preference, and/or any misperceived suspicions of a relationship between the attacker and the plaintiff.

# PRAYER FOR RELIEF

Wherefore, Mr. Williams requests that the Court grant the following relief:

1. A declaratory judgment that Defendants violated Mr. Williams rights under the 8th and 14th Amendments and Title VII; (And the 1st Amendment...)

2. Immediate recalibration of Mr. Williams' institutional Custody Level to a C.L. (Two);

3. Immediate rescinding of Mr. Williams' institutional Z-code status with the prerequisite condition that he (like other inmates whose Z-codes were rescinded) can select his own cellmate and a 30 days allowance of time to do so at whatever State Correctional Institution he is transferred (a choice free of race-segregation and sex orientation-segregation)

4. Mandatory Parole without prejudice, discrimination or conference to undermine the preconditions set in this prayer for relief. Parole is managed by prison officials, monthly;

5. Injunctive relief requiring Defendant Wetzel to transfer Mr. Williams and assure a housing unit worthy of his recalibrated Custody Level ("C.L-two"), and all the prison privileges, programs and activities afforded a "CL-two";

6. Injunctive relief requiring Defendants Wetzel and Mahally and Mooney to enact and enforce additional policies to prevent sexual abuse and harrassment of gay, bi-sexual, transgender and mentally psychiatrically-treated inmates, including but not limited to additional training and supervision, effective discipline for their jailer subordinates named in this Complaint and beyond and more sensitivity-training into investigations and allegations of sexual abuse, harrassment and issues surrounding inmates with recommendations for parole;

7. Compensatory damages; (Bivens lawsuit)

8. Punitive damages;

9. Attorney's fees and costs; and

10. Any other relief the Court deems just and proper.

## Verification

I have read the foregoing Complaint and hereby verify that the matters alledged herein are true, except as to matters alledged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Marienville, Pennsylvania on 15th December 2016.

Mr. Mark-Alonzo Williams, pro se,

12ᵗʰ December 2016

Mr Mark-Alonzo Williams

SCI-Forest, PO Box 945

Marienville, PA 16239

<u>RE:</u> The Librarian at SCI-Forest Is Willfully, Intentionally And With Malice Withholding
AO 398 and AO 399 to delay this 1983 Section, filing.

Clerk Of Courts,

    This lawsuit filing is missing the two forms aforementioned, they are on the way, but so that I'm not timebarred by filing the suit —— a concern prison officials at SCI-Forest are aware of —— I must submit the lawsuit now for it to be timely in scope of legality... and I'll just have to send the court the <u>Waivers</u> and <u>Notice Of A Lawsuits</u>... form for all the defendants in the next two weeks.

    The holidays are coming; state/fed. workers take days in moratorium far from, and then well after, the actual holiday, and since I don't know the days this will occur, I'm submitting the lawsuit before the season of "Offs" occurs. Please afford me this allowance to get the AO 398 and AO 399's to your court later...

Respectfully Submitted:

Mr Mark-Alonzo Williams, pro se